UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GS HOLISTIC, LLC, | No. 2:22-cv-02036 AC |
| Plaintiff, | |
| v. | ORDER and FINDINGS AND RECOMMENDATIONS |
| ROSEVILLE SMOKE N VAPE INC d/b/a ROSEVILLE SMOKE N VAPE and BALJIT SINGH, | |
| Defendants. | |

This matter is before the court on plaintiff's motion for default judgment. ECF No. 10. The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19). This motion was set for hearing on the papers on May 3, 2023. ECF No. 11. Defendants have not made any appearance. For the reasons set forth below, the undersigned recommends plaintiff's motion be GRANTED, and that judgment be entered in favor of plaintiff.

**I.   Relevant Background**

Plaintiff, GS Holistic, brought its complaint on November 9, 2022, presenting claims of trademark infringement (15 U.S.C. § 1114), and false advertising (15 U.S.C. § 1125(a)). ECF No. 1 at 10-13. Plaintiff alleges that it is the registered owner of the Stündenglass trademarks. Id. at 2. Since 2020, GS has marketed and sold products using the well-known trademark "Stündenglass." Per the complaint, the Stündenglass branded products, such as glass infusers and

accessories related thereto, are widely recognized nationally and internationally. Id. at 3. GS has worked "to distinguish the Stündenglass brand as the premier manufacturer of glass infusers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience" for at least two years. Id. Plaintiff alleges that defendant is "unlawfully selling glass infusers that have identical, or nearly identical, versions of the Stündenglass Marks affixed to products that are made with inferior materials and technology." Id. at 5.

A summons in this case was issued to defendants on February 3, 2023. ECF Nos. 4, 5. Defendants did not appear, and plaintiff moved for entry of default on February 27, 2023. ECF No. 6. The clerk entered default on March 1, 2023. ECF No. 9. Plaintiff moved for default judgment on March 10, 2023. ECF No. 10. Defendants did not respond to the motion for entry of default judgment, and have not otherwise appeared in this case.

## II.     Motion

Plaintiff moves for default judgment on all counts, seeking an award of $150,000.00 ($50,000 per Mark) in statutory damages, along with costs in the total amount of $921.24, consisting of the filing fee ($402.00), the process server fee ($130), and plaintiff's investigation fees ($389.24). ECF No. 10 at 10. Defendant has not appeared or filed any response.

## III.     Analysis

A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

B. The Eitel Factors

1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, plaintiff would suffer prejudice if the court did not enter a default judgment because it would be without recourse for

1 recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

2. Factors Two and Three: Merits of Claims and Sufficiency of Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175. Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment.

Plaintiff brings two causes of action: (1) trademark infringement (15 U.S.C. § 1114, and (2) false advertising (15 U.S.C. § 1125(a)). Although plaintiff has alleged two distinct claims, "the essential elements of the federal claims are identical[.]" Phillip Morris USA Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004) (citing Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046 n.6, 1047 n.8 (9th Cir. 1999)).

    a. Trademark infringement

To state a claim for trademark infringement, the complaint must allege that the plaintiff: "(1) ...has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." Department of Parks and Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006); see also Multi Time Machine, Inc. v. Amazon.com, Inc., 804 F.3d 930, 935 (9th Cir. 2015) ("To prevail on a claim of trademark infringement under the Lanham Act, a trademark holder must show that the defendant's use of its trademark is likely to cause confusion, or to cause mistake, or to deceive."). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998). In evaluating the likelihood of confusion, the court employs an eight factor test. See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prod., 353 F.3d 792, 810 n.19 (9th Cir. 2003).

////

1    Plaintiff made the requisite allegation of protectable ownership in its complaint, and
2    supported the allegation with trademark registration numbers as follows: (1) U.S. Trademark
3    Registration Number 6,633,884 for the standard character mark "Stündenglass" in association
4    with goods further identified in registration in international class 011; (2) U.S. Trademark
5    Registration Number 6,174,292 for the design plus words mark "S" and its logo in association
6    with goods further identified in the registration in international class 034; (3) U.S. Trademark
7    Registration Number 6,174,291 for the standard character mark "Stündenglass" in association
8    with goods further identified in registration in international class 034. ECF No. 1 at 4. Plaintiff
9    alleged that "Stündenglass Trademarks are exclusive to GS and appear clearly on GS's
10   Stündenglass Products, as well as on the packaging and advertisements related to the products.
11   GS has expended substantial time, money, and other resources in developing, advertising, and
12   otherwise promoting and protecting these Trademarks." Id. at 4.

13   Plaintiff also successfully addresses each factor of the Sleekcraft test for likelihood of
14   confusion: (i) strength of the mark; (ii) proximity of the goods; (iii) similarity of the marks; (iv)
15   evidence of actual confusion; (v) marketing channels used; (vi) type of goods and degree of care
16   likely to be exercised by the purchaser; (vii) defendant's intent in selecting the mark; and (viii)
17   likelihood of expansion of the product lines. See Sleekcraft, 599 F.3d at 348-49. The court now
18   addresses these factors in turn.

19   *(i)   Strength of the mark*

20   A "strong," or distinctive, mark is afforded greater protection under trademark law than a
21   mark that is not strong. See, e.g., Sutter Home Winery, Inc. v. Madrona Vineyards, L.P., No. C
22   05-0587 MHP, 2005 WL 701599, *8 (N.D. Cal. Mar. 23, 2005) ("The strength of protection
23   afforded to a trademark is proportionate to the likelihood that the public will remember the mark
24   and associate it with the source of the trademarked goods" (citations omitted)). When evaluating
25   the strength of a mark, courts consider both conceptual and commercial strength. Id.

26   The conceptual strength of a mark "is determined by its placement on a continuum of
27   marks from 'generic,' afforded no protection; through 'descriptive' or 'suggestive,' given
28   moderate protection; to 'arbitrary' or 'fanciful' awarded maximum protection." E. & J. Gallo

5

Winery, 967 F.2d at 1291 (quoting Nutri/System, Inc. v. Con-Stan Industries, Inc., 809 F.2d 601, 605 (9th Cir. 1987) (quotation marks omitted)). The nature of a mark is determined by the "imagination test" and a "need test." Id. (citing Earthquake Sound Corp. v. Bumper Industries, 352 F.3d 1210, 1221 n. 4 (9th Cir. 2003)). Using the "imagination test" the court asks how much imagination a consumer must use to associate a given mark with the goods or services it identifies, and using the "need test" the court examines the extent to which competitors need a mark to identify their goods or services. Earthquake Sound Corp., 352 F.3d at 1221 n. 4 (quoting Miss World (UK) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1449 (9th Cir. 1988)).

Applying these tests, the court finds that the "Stündenglass" mark is best classified as a "suggestive" mark. The word "stündenglass" means "hourglass" in German. The mark, while directly translating to a word that describes a general shape, nonetheless "suggests, rather than describes, an ingredient, quality or characteristic" of the product. Thus, the mark is entitled to moderate protection. E. & J. Gallo Winery, 967 F.2d at 1291.

Finally, taking plaintiff's allegations as true, the "Stündenglass" mark has commercial strength. According to plaintiff, GS's Stündenglass Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs. ECF No. 1 at ¶ 16. Because of these and other factors, the Stündenglass brand, and GS's Stündenglass Trademarks are famous throughout the United States. Id. Because the mark is entitled to moderate rather than maximum protection, but nonetheless has commercial strength, this factor weighs in favor of finding a likelihood of confusion.

    (ii)  Proximity of the goods

"Where goods are related or complementary, the danger of consumer confusion is heightened." E.&J. Gallo Winery, 967 at 1291. Here, plaintiff asserts defendants are intentionally selling counterfeit goods using a false designation of origin. ECF No. 10 at 7-8. This factor weighs strongly in favor of finding a likelihood of confusion.

////

////

6

### (iii) Similarity of the marks

The "similarity of the marks" portion of the Sleekcraft test "is the most crucial factor in determining the likelihood of confusion." Sutter Home Winery, Inc., 2005 WL 701599 at *5. Here, the infringing goods are counterfeit, imitating plaintiff's registered mark. This factor weighs strongly in favor of finding a likelihood of confusion.

### (iv) Evidence of actual confusion

While evidence of actual confusion is not necessary to prevail on an infringement claim or to secure injunctive relief, it can provide persuasive evidence that future confusion is likely. See Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1456 (9th Cir. 1991). Plaintiff submitted in a declaration that its research has revelated that at least 3 out of every 10 products sold purporting to be plaintiff's products are counterfeit. ECF No. 10-4 at 2. This factor weighs in favor of finding a likelihood of confusion.

### (v) Marketing channels used

An analysis of marketing channels accounts for overlapping advertising streams. Because plaintiff's Trademarked products are sold at the same type of shops that the counterfeit products are sold, this factor weighs in favor of finding a likelihood of confusion.

### (vi) Type of goods and degree of care likely to be exercised by the purchase

"[A] Stündenglass brand glass infuser is priced at $599.95, while a non-Stündenglass branded product is also being sold for up to $600, with a range of $199 to $600. ECF No. 10 at 4. While not inexpensive, infusers purchased at retail stores are not the type of product generally expected to involve an exceptionally high degree of care exercised by the purchaser. This factor weighs in favor of finding a likelihood of confusion.

### (vii) Defendant's intent in selecting the mark

Plaintiff alleges that defendant intentionally appropriated its mark to sell counterfeit infusers, masquerading as the plaintiff's infusers. Plaintiff's allegation of the intentional false designation of origin by defendants favors finding a likelihood of confusion.

////

////

        (viii)    *Likelihood of expansion of product lines*

This factor evaluates whether a parties' product line is likely to expand to create competition; where the parties are already in direct competition with one another, this factor is not relevant. See, e.g., Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc., 457 F.3d 1062, 1078 n. 12 (9th Cir. 2006) ("The final factor, '[a] likelihood of expansion in product lines,' warrants no discussion as it is 'relatively unimportant where two companies already compete to a significant extent,' " quoting Brookfield Communications, 174 F.3d at 1060).

Based on a review of the entire record, the court finds that plaintiff has demonstrated protectable ownership in its mark and a likelihood of confusion stemming from defendant's unauthorized use. Accordingly, the second and third Eitel factors are satisfied as to the claims related to trademark infringement.

        3.    Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. Here, plaintiff seeks an award of and statutory damages in the amount of $50,000 per Mark. The amount at issue is proportionate to the seriousness of defendant's conduct and this factor favors entry of default judgment.

        4.    Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.

////

////

5. Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, there is no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff served the defendant with the summons and complaint. ECF Nos. 4 and 5. Moreover, plaintiff served defendant by mail with notice of its application for default judgment. ECF No. 13. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant failed to defend itself in this action. Thus, the record supports a conclusion that the defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

6. Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

7. Conclusion: Propriety of Default Judgment

Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendant. What remains is the determination of the amount of damages to which plaintiff is entitled.

C. Terms of Judgment

Upon entry of default, the complaint's factual allegations regarding liability are taken as true, but allegations regarding damages must be proven. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir.1987). Plaintiff's motion seeks an award of statutory damages under the Lanham Act 15 U.S.C. § 1117(c) in the amount of $150,000.00 ($50,000 per Mark). The Lanham Act provides for statutory damages for trademark infringement, but in an amount "not

9

less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). According to 15 U.S.C. § 1117(b), "in a case involving use of a counterfeit mark . . . the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater. . . ." See, Mophie, Inc. v. Shah, No. SACV 13-1321-DMG (JEMx), 2015 WL 12683786, at *1 (C.D. Cal. Feb. 9, 2015).

Plaintiff submitted the affidavit of Christopher Folkerts, Chief Executive Officer of plaintiff GS Holistic, LLC. ECF No. 10-4 at 1. Folkers avers that the sale of counterfeit Stunglass products in general – not specific to defendant's sales – cost the company an estimated $28,800,000.00 in 2021 alone. ECF No. 10-4 at 2-3. While plaintiff's request for $50,000.00 per mark is not justified by the affidavit, the court notes that the statutory damages provision was added in 1995 precisely "because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept ..., making proving actual damages in these cases extremely difficult if not impossible." Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (citing S.Rep. No. 104–177, at 10 (1995)). Thus, "statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." Microsoft Corp. v. McGee, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007).

"Statutory damage awards by courts vary widely." Sream, Inc. v. Singh, No. 1:18-cv-00987 DAD BAM, 2018 WL 5819455, at *9 (E.D. Cal. Nov. 5, 2018), report and recommendation adopted, No. 1:18-cv-00987 DAD BAM, 2019 WL 2160358 (E.D. Cal. Feb. 13, 2019). The Sream plaintiffs had presented evidence of a single counterfeit sale and there was no evidence to determine how many counterfeit items were sold. The court accordingly awarded $20,000 rather than the requested $200,000. Id. Other illustrative cases cited by the Sream court and relevant here are Otter Products LLC v. Ace Colors Fashion, Inc., No. 2:14-cv-00141-ODW(ASx), 2014 WL 1512189, at *4 (C.D. Cal. Apr. 15, 2014) (awarding $35,000 upon evidence of the sale of eleven counterfeit items after the plaintiff requested $100,000)); E.I. Du Pont de Nemours and Co. v. Drabek, No. CV 12-10574 DDP AJWx, 2013 WL 4033630, at *7 (C.D. Cal. May 3, 2013) (declining to issue the statutory maximum award because the plaintiff

presented no evidence regarding the extent of sales by the defendant, but awarding $25,000 per product based on evidence of 21 products bearing the plaintiff's marks); Sream, Inc. & Roor International BV v. Andy's Smoke Shop, Inc., No. 18-cv-1676 MMA (RBB), 2018 WL 5279130, at *6 (S.D. Cal. Oct. 23, 2018) (awarding statutory damages for one infringed trademark totaling $25,000); Sream, Inc. v. Walsh, No. EDCV 16-2538 JGB (KKx), 2017 WL 8230031, at *6 (C.D. Cal. Feb. 14, 2017) (awarding $10,000 based on sale of one infringing product where plaintiff requested $300,000); Sream, Inc. v. Hanoun, No. ED CV 16-01394 AB(JCx), 2016 WL 11002361, at *4 (C.D. Cal. Oct. 28, 2016) (finding $50,000 to be reasonable statutory award for willful conduct on evidence of one product sold); Sream, Inc. v. Elgawly, No. CV 16-840-R, 2016 WL 4967710, at *3 (C.D. Cal. Sept. 14, 2016) (awarding statutory damages in the amount of $50,000.01 for willful conduct and evidence of one product sold).

Here, the complaint alleges that on October 24, 2022, its investigator purchased a Glass Infuser with a Stündenglass Mark from defendant at the price of $323.24. ECF No. 1 at 6-7. Inspection of the infuser revealed it was counterfeit. Id. The complaint is silent as to the quantity of counterfeit products sold by defendant or the damages plaintiff has sustained as a result of defendant's personal conduct (as opposed to damages caused by the counterfeit market overall). The affidavits in support of the default judgment motion present no evidence regarding the quantity of counterfeit products sold by defendant or damages attributable to defendants specifically. ECF Nos. 10-3, 10-4. Accordingly, based on a review of the evidence and judgments in similar cases, the court concludes plaintiff's request is excessive and recommends an award of $25,000 per mark ($75,000 in total) as reasonable statutory damages.

Finally, plaintiff seeks an award of costs. ECF No. 10 at 10.[1] "An award of reasonable attorneys' fees and costs is expressly provided for in 'exceptional cases' of trademark infringement." Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008) (quoting 15 U.S.C. § 1117(a)). The term "exceptional cases" is generally accepted to mean cases in which trademark infringement is "deliberate and willful." See Lindy Pen Co. v. Bic Pen Corp.,

---

[1] The court notes that plaintiff did not request an award of attorneys' fees, nor did plaintiff request injunctive relief. ECF No. 10 at 5-10.

11

982 F.2d 1400, 1409 (9th Cir. 1993) (interpreting the term "exceptional" to apply when "the infringement is malicious, fraudulent, deliberate, or willful."). Plaintiff submitted an acceptable affidavit from counsel indicating that it accrued costs in the total amount of $921.24 consisting of the filing fee ($402.00), the process server fee ($130), and Plaintiff's investigation fees ($389.24). ECF No. 10-5 at 1. The court finds that the costs are reasonable appropriate.

## IV.   Conclusion

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court shall randomly assign a district judge to this action.

It is RECOMMENDED THAT:

1. Plaintiff's March 10, 2023 motion for default judgment, (ECF No. 10) be granted;

2. The court award plaintiff $75,000 in statutory damages for defendant's violations of the Lanham Act;

3. The court grant plaintiff's request for costs in the amount of $921.24; and

4. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: June 14, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE